# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JACK VASTINE JONES, JR.<br><br>        Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, in her capacity as Commissioner of the Social Security Administration,<br><br>        Defendant. | Case No. 2:12-cv-00135-MHW<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |

# INTRODUCTION

This case involves a challenge to the denial of disability benefits by the Social Security Administration. Currently pending before the court are cross motions for summary judgment filed by Plaintiff Jack V. Jones and Defendant Commissioner of Social Security.[1] (Dkts. 15 & 17). Plaintiff is represented by Lora Lee Stover and Defendant is represented by Assistant United States Attorneys Daphne Banay and Pamela Jean DeRusha. The Court has reviewed the motions and supporting memoranda as well as the Administrative Record and deems these motions suitable for disposition without oral argument. For the reasons that

---

[1] Carolyn W. Colvin became the Acting commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 1**

follow, the Court will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Plaintiff filed an application for social security disability benefits and supplemental security income on February 24, 2009. (Tr. 38, 123-133). Plaintiff's applications were denied both initially and on reconsideration. (Tr. 38 & 86-93). Administrative Law Judge ("ALJ") James W. Sherry held a hearing on February 9, 2010, taking testimony from both Plaintiff and a Vocational Expert. (Tr. 52-80). ALJ Sherry issued a decision finding Plaintiff not disabled on March 29, 2010. (Tr. 6-20.) Plaintiff filed a timely appeal to the Appeals Council, (Tr. 30-33), and submitted additional evidence regarding cognitive and mental health deficits at this stage of the process. (Tr. 349-355 & 420-429). The Appeals Council accepted the evidence but denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-7.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing before the ALJ in February of 2010, Plaintiff was 53 years old. (Tr. 123). He has a twelfth grade education and past work experience as both an unarmed security guard and as a janitor (Tr. 45-46, 72-73, 152). Plaintiff alleged disability due to heart problems, high cholesterol and high blood pressure, anxiety, and stress. (Tr. 145).

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving a disability in the first four steps of the sequential evaluation, after which

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 2**

the burden moves to the Commissioner at the fifth step. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, it must be determined whether the claimant is engaged in substantial gainful activity. 20 CFR 404.1520(b) and 416.920(b). The ALJ found Petitioner had not engaged in substantial gainful activity since November 1, 2007. (Tr. at 40).

At step two, it must be determined whether claimant suffers from a severe impairment, or a combination of impairments that is severe according to 20 CFR 404.1520(c) or 416.920(c). The ALJ found that Plaintiff had the following impairments, all of which rated as severe: coronary artery disease, ischemic cardiomyopathy, high blood pressure, high cholesterol, asthma, and obesity. (Tr. at 40). Plaintiff also alleged symptoms of anxiety and stress, but at the time of the hearing before the ALJ, the only evidence in the record regarding mental impairments was the opinion of state psychological consultant who concluded that there was no evidence of any medically determinable mental health impairment. (Tr. 41). Accordingly, in the decision, the severe impairments identified by the ALJ were limited to the physical conditions listed above.

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment, as set forth in 20 CFR Part 404, Subpart P Appendix 1. If the claimant's impairments meet or equal a listed impairment and meets the duration requirements set forth in 20 CFR 404.1509 or 416.909, the analysis is done and the claimant is conclusively shown to be disabled. If, however, the claimant's impairments do not meet or equal the criteria for the listed impairments, the ALJ must determine a claimant's residual functional capacity

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 3**

(RFC) according to 20 CFR 404.1520(e) or 416.920(e). An individual's residual functional capacity is an assessment of the most a person can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

In this case, at step three, the ALJ found that the Plaintiff's symptoms from his heart disease, asthma, obesity and hyperlipidemia did not meet or equal a listed impairment. (Tr. 42). Next, the ALJ found that Plaintiff had a residual functional capacity consistent with an ability to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with some limitation on activities such as climbing, crawling and exposure to extreme heat, gases, and other irritants. (Tr. 42).

At step four, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of his past relevant work. 20 C.F.R. 404.1520(f) and 416.920(f). Here, the ALJ determined that Plaintiff was able to perform his past relevant work as an unarmed security guard. (Tr. 42-45). The fifth and final step of the analysis requires an assessment of whether the claimant is able to do other work that exists in significant numbers in the national economy considering the claimant's residual functional capacity, age, education and work experience. Here, the ALJ did not address step five because he had determined at step four that Plaintiff was capable of performing his past relevant work.

## STANDARD OF REVIEW

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 4**

determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotations omitted). It is more than a scintilla but less than a preponderance. *Id.*

Finally, it is well-settled that if there is substantial evidence to support the decision of the ALJ, the decision must be upheld "if supported by inferences reasonably drawn from the record . . ." even "where the evidence is susceptible to more than one rational interpretation." *Id.* The Court may not substitute its judgment for that of the ALJ. *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006).

## ISSUES

Plaintiff argues that the ALJ erred in the following ways: 1) by failing to find that Plaintiff has non-exertional limitations due to depression and anxiety as well as fatigue due

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 5**

to his cardiac condition; 2) by disregarding the opinions of Plaintiff's cardiologist Dr. Everett; 3) by failing to correctly assess Plaintiff's residual functional capacities; 4) by failing to propose proper hypotheticals to the vocational expert; and 5) by erroneously assessing Plaintiff's credibility.  Plaintiff also argues generally that the ALJ's decision finding him not disabled is not supported by substantial evidence.

## DISCUSSION

**A. The ALJ's Decision Was Supported by Substantial Evidence.**

The Court has no trouble concluding that the ALJ committed no error based on the evidence in the record at the time he made his decision. At the time of the hearing before the ALJ, Plaintiff's primary medical impairment consisted of coronary artery disease, which he was diagnosed with after suffering a myocardial infarction in 2003. (Tr. 40 & 271-278). Plaintiff also suffered from related cardiac conditions of high blood pressure and hyperlipidemia. (Tr. 208). However, the ALJ correctly observed that in records dating from January of 2007 Plaintiff's treating cardiologist, Dr. John Everett, noted that Plaintiff had been feeling well over the last year and had not had any particular episodes of chest pain. (Tr. 217). In November of 2007, after the death of his mother and the loss of his job, Plaintiff experienced "a couple of episodes of atypical chest pain." (Tr. 211). However, Dr. Everett noted that he had  "stable LV [left ventricular] function" and that "overall, ejection fraction is mild to moderately reduced and patient's cardiac function remains stable." (Tr. 211 & 214). In June of 2009, less than a year before the ALJ issued his decision, Dr. Everett described Plaintiff as having had a "pretty unremarkable course" since the myocardial infarction and

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 6**

LAD stent placement in 2003. (Tr. 250). Dr. Everett's records also indicated that Plaintiff's cholesterol, blood pressure, and chest pains were being aggressively managed through medication. (Tr. 248 & 250).

In August of 2009, during an assessment of Plaintiff's asthma, Dr. Jared Anderson noted that Plaintiff had passed his cardiac stress test with Dr. Everett and further stated that in light of this fact, "without other proof of disability it would be hard for me to sign for his disability at this time." (Tr. 265). With regard to Plaintiff's asthma, Dr. Anderson also found that his pulmonary function showed "no real obstruction" and noted an improvement in symptoms after using Albuterol. (Tr. 255).

In addition to the evidence from Dr. Everett and Dr. Anderson, the record contained the opinions of two non-treating medical consultants who specifically addressed Plaintiff's residual functional capacity and concluded that he was capable of performing a limited range of light work, with certain restrictions. (Tr. 220-227 & 243). Specifically, a Residual Functional Capacity Assessment performed by Dr. Lloyd Schneiderman concluded that Plaintiff could stand, walk, or sit with normal breaks about six hours in an 8 hour work day, frequently lift ten pounds, and occasionally lift twenty pounds. This assessment did note some postural limitations on activities such as climbing, balancing, stooping, kneeling, and crouching, but also noted that claimant was independent with activities of daily living and in personal care. (Tr. 220-227). This assessment was later confirmed by another state consultant, Dr. Normal Staley, M.D. (Tr. 243).

Regarding mental impairments, the only evidence in the record at the time the ALJ

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 7**

made his decision indicated that there were none. Specifically, an assessment by Dr. Mack Stephenson, PhD, conducted on April 17, 2009 found no medically determinable mental impairment. (Tr. 228). Since there was no evidence of an existing mental impairment in the record at the time the ALJ made his decision, the hypotheticals posed to the Vocational Expert fully accounted for all the evidence that was then before him. *See, e.g. Heiskanen v. Colvin,* 2013 WL 5310428 at * 7 (E.D.Wash. 2013) (quoting *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988) (holding that while hypothetical questions to vocational expert must set out all the limitations and restrictions of a particular claimant, an ALJ is only required to present the VE with those limitations he finds to be credible and supported by the evidence.). *See also, Osenbrock v. Apfel,* 240 F.3d 1157, 1165–66 (9th Cir.2001). Thus, though the Plaintiff ultimately submitted new evidence of mental health impairments to the Appeals Council, the Court finds no error in the ALJ's assessment of mental health issues at the time the decision was issued.[2]

Plaintiff also argues that the ALJ erred in his assessment of Dr. Everett's opinion. The Court disagrees. The opinion of a treating physician is given deference because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Morgan v. Commissioner of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir.1987)). However, the opinion of

---

[2]Two medical opinion reports were submitted to the Appeals Council. (Tr. 340-355 & 420-29). One of these was rendered almost one year after the ALJ's March 29, 2010 decision and the other almost a year and a half after the decision.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 8**

the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability. *Id. See also, Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989); *Rodriguez v. Bowen*, 876 F.2d 759, 761–62 & n. 7 (9th Cir.1989).

Plaintiff's argument inaccurately states what the ALJ actually decided with respect to Dr. Everett's opinions. (Tr. 45, 249). The most recent report from Dr. Everett available to the ALJ stated that Plaintiff "has limitations on his exertional and physical tolerance," that he becomes easily fatigued or develops dyspnea with moderate levels of exertion, and that he is "at least moderately impaired with respect to his exertional tolerance." (*Id.*). However, Dr. Everett's records did not state that Plaintiff was actually disabled or provide any opinions suggesting he would be incapable of light work, which is the RFC designation arrived at by the two state medical consultants.

In addition, the ALJ did not so much reject Dr. Everett's opinions outright as decide to accord them limited weight, finding that there was "no indication in [Dr. Everett's] assessment that claimant's condition renders him incapable of performing a limited range of light work." (Tr. 45, 249). As the government points out, an ALJ need not accept a doctor's opinion when it does not show how a claimant's symptoms or identified characteristics translate into specific functional limitations that would preclude work activity. *See Morgan,* 169 F.3d at 600-601. Moreover, courts have held that ALJs are entitled to rely on not just what the record says, but what it does *not* say. *See, e.g. Lane v. Comm'r. of Soc. Sec.* 100 Fed.Appx. 90, 95-96 (3rd Cir. 2004) (holding that lack of medical evidence that claimant is

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 9**

disabled is very strong indication that she was not); *Schneider v. Astrue,* 2009 WL 4262095 at * 10 (W.D. Pa. 2009) (affirming decision of ALJ where record was "conspicuously devoid of any evidence demonstrating the Plaintiff's impairments resulted in physical limitations apart from those credited by the ALJ."); Here, Dr. Everett never expressed an opinion inconsistent with the idea that Plaintiff was capable of doing light work, but instead, indicated he had only "moderate" exertional limitations. Thus, the ALJ did not err in his assessment of Dr. Everett's opinions.

### B. The ALJ Did Not Err in Assessing Plaintiff's Credibility.

Nor did the ALJ err in assessing Plaintiff's credibility. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). To reject a claimant's testimony regarding impairments, "the ALJ [is] required to make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). "The ALJ must support his credibility finding 'with specific, clear and convincing reasons.'" *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quoting *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011)).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility

evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; claimant's daily activities; claimant's work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Courts have also held that an ALJ may take the claimant's daily activities into account. *Light v. Social Sec. Admin,* 119 F.3d 789, 792 (9th Cir. 1997); *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989). In addition to those factors, the ALJ may consider prior inconsistent statements regarding the symptoms or, "other testimony by the claimant that appears less than candid." *Chaudhry*, 688 F.3d at 672 (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Id*.

Here, the ALJ's credibility determination was based upon the discrepancy between Plaintiff's testimony at the hearing and the actual range of activities that he had previously stated he was capable of performing. (Tr. 43). Specifically, the ALJ relied upon forms filled out by Plaintiff indicating that was largely independent in activities of daily living, that he prepared meals about four times a week, did his own housecleaning, laundry, ironing and lawn care. On these forms, Plaintiff also indicated that he takes walks a couple of times a day and that he could walk for one to two miles before he needs to stop and rest. (Tr. 163-165). He also reported that he can maintain attention for 30 minutes to an hour. (Tr. 168). Thus, the Court concludes that the ALJ's credibility determination was supported by substantial

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 11**

evidence.

Finally, there was objective evidence in the record, namely the reports of Dr. Lloyd and Dr. Schneiderman, that clearly supported a finding that Plaintiff was capable of performing a limited range of light work. (Tr. 220-227). Therefore, the assertion that the ALJ erred in assisting Plaintiff's residual functional capacity also fails. For all these reasons, the Court concludes that the ALJ's decision was supported by substantial evidence in the record at the time he made his decision.

### C. Whether New Evidence Submitted to the Appeals Council Justifies a Remand.

This conclusion does not end the matter, however, because the Court must still consider whether the new evidence submitted at the level of the Appeals Council requires a remand. After the ALJ submitted his decision, the Plaintiff requested review by the Appeals Council and also submitted new evidence in the form of mental health assessments from two practicing psychologists, Dr. Jeffrey Rosekrans and Dr. John Arnold. (Tr. 349-355 & 420-429). Claimant also submitted school records from the 1970s demonstrating that he has significant reading deficits. (Tr. 198-201). The Appeals Council accepted this evidence but denied review of Plaintiff's claims, stating without explanation that it would not have made a difference to the ALJ's decision. (Tr. 1-2). The Court concludes this new evidence does not constitute a reason to remand the case.

According to long-established Ninth Circuit precedent, where the Appeals Council accepts new evidence but denies review of a case, the newly accepted evidence becomes part

of the record which the District Court must then review. *See, e.g. Taylor v. Comm'r. of Social Security,* 659 F.3d 1228 (9th Cir. 2011); *Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir. 1993). However, since the Appeals Council's decision to deny review is not subject to judicial review by the courts, the decision under review is still that of the ALJ. *Taylor,* 659 F.3d at 1231. When conducting such a review, this Court has assessed the new evidence to determine whether there is a "reasonable possibility" that the evidence would have changed the outcome of the ALJ's determination. *See, e.g. Young v. Astrue,* 2012 WL 1884273 at * 6 (E.D. Wash. 2012).

Here, it is undisputed that new diagnoses of major depressive disorder and generalized anxiety disorder were obtained after the ALJ's decision. When the ALJ considered the evidence in February and March of 2010, there was no evidence that the Claimant had a mental health impairment. Thus, the ALJ looked only at a series of *physical* impairments that he had determined to be severe in assessing whether Claimant's condition met or equaled one of the listings and in assessing his residual functional capacity. Claimant argues that the ALJ's decision should be reversed or remanded because the ALJ failed to account for the entire spectrum of Plaintiff's impairments. While the argument has some logical appeal to it, it ultimately fails because the new mental health assessments were largely consistent with the ALJ's conclusion that Plaintiff was capable of performing a limited range of light work and of performing his past relevant work as an unarmed security guard.

After the ALJ's decision was issued, Claimant went to see two mental health

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 13**

professionals. The first of these was a clinical psychologist by the name of John Arnold, who assessed claimant on January 11, 2011. (Tr. 352). Dr. Arnold diagnosed Plaintiff as suffering from major depressive disorder, single episode (moderate), with an estimated onset date of January 31, 2006. (Tr. 350). Dr. Arnold also noted that Jones had a Global Assessment of Functioning ("GAF") score of 50. (*Id.*) He further noted that claimant became easily frustrated and irritable, appeared to have a lack of motivation and interest, and that he was tearful, labile, and sad. Dr. Arnold indicated that he expected these symptoms would have mild to moderate or moderate impacts on abilities such as concentration, pace, persistence, productivity, attendance, social interactions and communications skills. (*Id.*). In the portion of his assessment addressing functional limitations, Dr. Arnold stated that Plaintiff was "moderately" limited in various categories of cognitive and social functioning, including the ability to understand, remember, and persist in tasks requiring simple instructions, to learn new tasks, to perform routine tasks without undue supervision, and to work effectively and maintain appropriate behavior in a setting with limited public contact. (Tr. 351). However, in a portion of his assessment in which he was asked to describe what the individual is capable of doing *despite* his or her impairments, Dr. Arnold stated that "Jack will be able to remember locations and simple repetitive work-like procedures, to maintain attention and concentration for limited periods, make very simple work like procedures, ask questions, request assistance, accept instructions, and adhere to basic standards of neatness and cleanliness." (*Id.*). Dr. Arnold also indicated that a mental health intervention was likely to restore or substantially

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 14**

improve Plaintiff's ability to work in a regular and predictable manner, and recommended specifically a course of cognitive behavioral therapy to increase coping, communication and problem solving skills, as well as counseling and/or medication. (Tr. 352).

Next, Dr. Frank Rosekrans assessed Plaintiff's on December 13, 2011. (Tr. 420). Dr. Rosekrans diagnosed Plaintiff with major depressive disorder and anxiety disorder, and gave him a GAF score of 45. (TR 420). However, Dr. Rosekrans also called into question the validity of some of the test results, stating, "since he is applying for welfare, he may believe, (correctly) that it is not in his interest to do well on these tasks." (Tr. 423)., Dr. Rosekrans further stated that certain indicators on the Personality Assessment Index (PAI) "suggest[ed] that the respondent may not have answered in a completely forthright manner." (Tr. 426).

Considering the record as a whole, the Court does not believe that there is a reasonable possibility that this new evidence would have made a difference to the ALJ's decision. First of all, courts in this district have held that evidence obtained after the ALJ has issued an adverse determination is less persuasive, and that after-the-fact psychiatric findings of this nature are "notoriously unreliable." *See, e.g., Kelly v. Astrue,* 2009 WL 169699 at * 7 n.4 (E.D. Wash. 2009); *Stokeley v. Colvin,* 2013 WL 1819688 at * 7 (E.D.Wash. 2013) (holding that psychological evaluations based on self-reported symptoms obtained after an ALJ's decision to deny benefits are of limited value ). And while Plaintiff's GAF scores were admittedly very low,[3] "the Commissioner has explicitly disavowed use of GAF scores as

---

[3]"A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert,*

indicators of disability." *See* 65 Fed.Reg. 50746–01, 50765 (August 21, 2000) (stating that "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing."). Both Dr. Arnold and Dr. Rosekrans called into question the validity of the test results and suggested that Plaintiff was not giving sufficient effort, possibly out of desire to achieve secondary gain. (Tr. 352 and 423). Most crucially, Dr. Arnold's assessment of the Plaintiff's capabilities was largely consistent with the RFC opinion given by Drs. Lloyd and Schneidermann. (Tr. 351). Thus, the new evidence would likely not have changed the ALJ's conclusion that Plaintiff was capable of performing his past relevant work as an unarmed security guard.  Put another way, the new evidence points to new impairments (depression and anxiety) which *may* have been considered "severe" at step two, but does not suggest disabling levels of either condition. *Cf. Young v. Astrue,* 2012 WL 1884273 at * 6-7 (E.D.Wash. 2012) (declining to remand for consideration of new psychiatric evaluations in part because those evaluations were largely consistent with the ALJ's RFC determination). Finally, Plaintiff's high school records do indicate a reading disability of longstanding duration but do not change the outcome because this deficit had never prevented Plaintiff from working in the past.

Because the Court has concluded that the additional mental health evaluations did not present a reasonable possibility that the ALJ would have reached a different decision, the claim that the administration did not adequately develop the record also fails. The duty to

---

159 F.3d 1161, 1164, n.2 (9th Cir. 1998).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 16**

develop the record only when there is ambiguous evidence or when the record is inadequate to allow for a proper evaluation of the evidence." *Mayes v. Massinari,* 276 F.3d 453, 459-60 (9th Cir. 2001). It must be borne in mind that a Plaintiff must show not just a diagnosis, but functional limitations preventing performance of substantial gainful activity. *Lane v. Comm'r of Social Security,* 100 Fed.Appx. 90, 95-96 (3rd Cir. 2004). Even assuming that the new diagnoses of depression and generalized anxiety disorder are correct, and the previous assessments finding no impairments wrong, the new evidence does not reasonably raise a question that these were *disabling* conditions for this particular claimant. Thus, the Administration did not err by failing to fully develop the record.

For all the foregoing reasons, the Court will affirm the decision of the ALJ.

### ORDER

1. Defendant's Motion for Summary Judgment (Dkt. 17) is **GRANTED.**

2. Plaintiff's motion for summary judgment (Dkt. 15) is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant.



DATED: November 12, 2013

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, P. 18**